| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>------------------------------------------------------------x<br>In re:<br><br>Quebecor World (USA), Inc., *et al.*,<br><br>             Debtors.<br>------------------------------------------------------------x<br>Eugene I. Davis, as Litigation Trustee for the<br>Quebecor World Litigation Trust,<br><br>             Plaintiff,<br><br>vs.<br><br>All Points Packaging & Distribution, Inc.,<br><br>             Defendant.<br>------------------------------------------------------------x | **FOR PUBLICATION**<br><br> Chapter 11<br><br>Case No. 08-10152 (JMP)<br><br>(Jointly Administered)<br><br><br><br> Adv. No. 10-01009 (SHL) |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CROSS MOTIONS FOR SUMMARY JUDGMENT

APPEARANCES:

ASK FINANCIAL LLP
*Attorneys for Eugene Davis, as Liquidating Trustee*
2600 Eagan Woods Drive, Suite 400
Eagan, MN 55121
 By: Kara E. Casteel, Esq.
    Joseph L. Steinfeld, Jr., Esq.
-and-

151 West 46th Street, 4th Floor
New York, New York 10036
 By: Edward E. Neiger, Esq.


JONES & ASSOCIATES
*Attorneys for All Points Packaging & Distribution, Inc.*
520 Eight Avenue, Suite 201
New York, New York 10018
 By: Ira R. Abel, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are cross motions for summary judgment filed by Eugene I. Davis, as Litigation Trustee for the Quebecor World Litigation Trust (the "Plaintiff" or "Trustee") and All Points Packaging & Distribution, Inc. (the "Defendant" or "All Points") in the above-captioned adversary proceeding. The Plaintiff claims that a certain transfer from Quebecor World (U.S.A.) Inc., *et al.* (the "Debtors") to All Points is a preference, and thus, should be repaid back to the estate pursuant to Section 547 of the Bankruptcy Code. All Points, not surprisingly, claims that the transfer is not a preference because it is made in the ordinary course of business.

Because this Court is adjudicating a motion for summary judgment, it must consider whether it has the constitutional authority to issue a final decision consistent with *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011). In *Stern*, the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The decision in *Stern* is understood in this district to mean that a bankruptcy court lacks final adjudicative authority over a core claim where all of the following three conditions are met: "1) the claim at issue did not fall within the public rights exception; 2) the claim would not necessarily be resolved in ruling on a creditor's proof of claim; and 3) the parties did not unanimously consent to final adjudication by a non-Article III tribunal.[1] *Weisfelner v. Blavatnik*

---

[1] At the hearing, the Court also notes that All Points stated that it "would prefer to have [y]our Honor issue findings of fact and conclusions of law." Hr'g Tr. 14:8-11 August 23, 2012. The Court therefore deems the Defendant to have not consented to entry of judgment in this action.

2

*(In re Lyondell Chem. Co.)*, 467 B.R. 712, 719-720 (S.D.N.Y. 2012) (internal citations and quotations omitted).

In ruling on a motion to withdraw the reference filed by the Defendant, the district court concluded that the claims here are "likely outside of the bankruptcy court's final adjudicative authority." *See* Order, *Davis v. All Points Packaging and Distribution, Inc.*, No. 12 Civ. 0888, at 2 (AJN) (S.D.N.Y. July 6, 2012). Accordingly, with respect to the pending cross motions for summary judgment, the Court files these proposed findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 9033,[2] recommending that the district court

---

[2] As the Plaintiff has dismissed all fraudulent conveyance claims, the only claim before the Court is a preference action arising under Section 547 of the Bankruptcy Code. The applicability of *Stern* to preference cases is less clear than its application to fraudulent conveyance actions. The case law across the country is split on the question of whether *Stern* applies to preference cases. *See In re Oldco M Corp.*, 484 B.R. 598, 602 n. 4 (Bankr. S.D.N.Y. 2012) (collecting cases).

Indeed, there are significant distinctions between preference cases and fraudulent conveyance actions. For example, a preference case is a unique creature of bankruptcy law designed to recover payments made by a debtor within 90 days of a bankruptcy filing that were not made in the ordinary course of business either between the parties or in the relevant industry. *See* 11 U.S.C. § 547(b), (c); *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) ("[T]he restructuring of debtor-creditor relations . . . may well be a 'public right . . . .'"). By contrast, fraudulent conveyance actions are similar to actions commonly pursued outside the bankruptcy courts. *Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989) ("[F]raudulent conveyance actions by bankruptcy trustees . . . are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a *pro rata* share of the bankruptcy res.").

Furthermore, a preference action is closely related to the bankruptcy claims process in a way that a fraudulent conveyance action is not. A successful preference case will result in the creation of a claim against the estate for the losing creditor who, while not entitled to retain the preferential payment, will nonetheless be entitled to recover *pro rata* in distributions as an unsecured creditor. The same is not true in a fraudulent conveyance action. *See West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, L.P.)*, 465 B.R. 452, 464-5 (Bankr. S.D. Tex. 2011) ("Transfers are avoidable as preferences only if they were made on account of an antecedent debt and enabled the recipient creditor to receive more than that creditor would receive in a chapter 7 distribution, if the transfer had not been made, and if the creditor received payment to the extent provided by the Bankruptcy Code. 11 U.S.C. § 547(b). Transfer recipients are, in this sense, treated as creditors of the estate even when they have not filed a proof of claim: they are subject to the same distribution rules. Even more importantly, if the transferred property is recovered for the bankruptcy estate, the antecedent debt for which the transfer was made will then be unpaid. 11 U.S.C. § 502(h) . . . The defendant thus becomes a creditor of the estate, even if the defendant had not

enter an order granting summary judgment in favor of the Plaintiff and denying the Defendant's motion for summary judgment.

## BACKGROUND

Since around 2005, All Points has been supplying the Debtors with shrink wrap materials. (Kalinowski Aff. ¶ 5 (ECF No. 46)).[3] During their business relationship, All Points issued invoices to the Debtors, which the Debtors generally paid on (weighted) average 55.44 days from the invoice date during the pre-preference period.[4] Pl.'s Br. at 14 (ECF No. 45); (Ex. G to Pl.'s Br.). At issue here is invoice number 8837 in the amount of $74,998.19 dated July 31, 2007. (Ex. F to Pl.'s Br.). The Debtors paid that invoice some 91 days later, on October 30, 2007, by a check dated October 25, 2007 in the amount of $67,078.19. (Ex. C to Pl.'s Br.). The Defendant also issued a credit memo in the amount of $7,920 – the amount the Debtors were overcharged – to balance its accounting books on October 30, 2007. (Kalinowski Aff. ¶ 9 (ECF No. 46)).

---

previously filed a proof of claim. A § 547 action therefore, by its nature, involves a determination of whether the defendant is a creditor of the estate.").

The Court looks forward to some much needed clarity in this area given the practical significance of the question. This Court frequently handles large Chapter 11 cases in which hundreds of adversary proceeding have been filed, with most being preference cases. In the above-captioned bankruptcy case, for example, more than 1,700 adversary proceedings were filed, the majority of which were preference cases. *See Stern*, 131 S. Ct. at 2620 (concluding that its ruling would not "meaningfully change[] the division of labor in the current statute.").

[3]   The Defendant provides inconsistent dates of when the parties' relationship began in its papers. In one instance, the Defendant states that the parties' relationship dates back to 2000 (Def.'s Br. at 16 (ECF No. 46)) and in another instance, the parties' relationship dates back to 2004 (Def.'s SOF ¶7 (ECF No. 46)). Given the analysis in this decision, however, this is not a material issue of fact.

[4]   The Plaintiff uses the metric "weighted average". The weighted average "is calculated by multiplying the amount of the invoice by the days it took to get paid and then dividing that value by the total amount of the invoices in the data set." *Forklift LP Corp. v. Spicer Clark-Hurth (In re Forklift LP Corp.)*, 2006 WL 2042979, at *4 (D. Del. July 20, 2006). The Defendant argues that the Debtors paid the invoices on average 60 days from the invoice date. (Kalinowski Aff. ¶ 6). The approximately 5-day discrepancy is insignificant for the Court's analysis. Even if the Court agrees with the Defendant, as discussed below, the one transfer at issue in this case is at least 30 days beyond the pre-preference period average.

On January 21, 2008, the Debtors filed the underlying bankruptcy case under Chapter 11 of Title 11 of the United States Bankruptcy Code. On July 2, 2009, the Debtors' third amended plan of reorganization was confirmed. The plan created a Litigation Trust that empowered the Trustee to prosecute or to settle certain claims for the benefit of certain beneficiaries of the Litigation Trust. Based on this right, on January 11, 2010, the Trustee commenced this adversary proceeding to avoid the transfer made by the Debtors to All Points in October 2007 pursuant to Sections 547, 548, 549, and 502 of the Bankruptcy Code, and to recover the property transferred in October 2007 pursuant to Section 550 of the Bankruptcy Code in the amount of $67,078.19. The Defendant filed its answer on March 15, 2010. After the hearing, the Plaintiff stipulated to the dismissal of its claims under Sections 548 and 549, leaving only its claim under Section 547.

On April 13, 2012, the Trustee moved for summary judgment on the basis that the transfer at issue constitutes a preference. On April 18, 2012, All Points moved for summary judgment on the basis that the transfer at issues falls within the ordinary course of business exception, and is therefore, not a preference. On August 23, 2012, the Court held a hearing on the motions.

The parties do not dispute that the transfer occurred within the 90-day preference period, commencing on October 23, 2007 and ending on, including, January 21, 2008. Pl.'s Br. at 7; Def.'s Resp. to Pl.'s SOF ¶¶ 11, 16 (ECF No. 49). The parties also do not dispute that the transfer satisfies the requirements of Section 547 as: (i) the transfer was made for the Defendant's benefit or for the benefit of a creditor; (ii) the Defendant was a creditor of the Debtors at the time of the transfer; (iii) the transfer was a payment on an antecedent debt, as the payment was made pursuant to an obligation that arose prior to the payment; (iv) the confirmed

5

plan provides for a less than 100% distribution to general unsecured creditors; and (v) the Defendant is an unsecured creditor.  Def.'s Resp. to Pl.'s SOF ¶¶ 13-15, 17-18.  The only remaining issue before the Court is whether the transfer at issue falls within the ordinary course of business exception provided for in the statute.

## DISCUSSION

### A. Summary Judgment Standard

It is appropriate for the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *See* Fed. R. Civ. P. 56(c) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056).  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc .(In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth

"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

### B. Ordinary Course of Business Defense

Section 547(c)(2) of the Bankruptcy Code provides that the trustee may not avoid a transfer under this section "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was —

> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). In order to prevail, a defendant must prove either the subjective test under Section 547(c)(2)(A), or the objective test under Section 547(c)(2)(B).[5] *In re M. Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *2.

The ordinary course of business exception protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007) (quoting *Sender v. Heggland Family Trust (In re Hedged-Investments Assocs.)*, 48 F.3d 470, 475 (10th Cir. 1995)). The purpose of the exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *Lawson v. Ford*

---

[5] While the 2005 amendments to the Bankruptcy Code made the ordinary course of business test disjunctive, the wording of the subparts has not changed. Thus, pre-2005 case law interpreting the requirements of Section 547 remains good law. *See Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, No. 06-12737, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010).

*Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 41 (2d Cir. 1996) (quoting H.R. Rep. No. 95-595 (1978) at 373, *Reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).

While a late payment is usually nonordinary, the defendant can rebut this presumption if late payments were the standard course of dealing between the parties. *See Id.* (quoting 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 504.04[2][ii], at 547–55 (16th ed. 2010) ("COLLIER")). The defendant bears the burden of proving its affirmative defense by a preponderance of the evidence. *Id.* at 39; *see* 11 U.S.C. § 547(g). Under Section 547(c)(2)(A), the defendant must prove that the transfer in question was made in the ordinary course of business or financial affairs of the debtor and the defendant. This section "requires an examination of whether a transfer was ordinary between the parties to the transfer." *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 603 (B.A.P. 2d Cir. 2000); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. at 459 (stating that the subjective test focuses solely on the prior dealings of debtor and creditor).

In determining whether a transfer falls within the ordinary course of business under Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 340 (Bankr. S.D.N.Y. 2006); *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005); *see also Hassett v. Goetzmann (In re CIS Corp.)*, 195 B.R. 251, 258 (Bankr. S.D.N.Y. 1996) (stating that the court typically examines several

factors including the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment).

The creditor must establish a "baseline of dealings" between the parties in order to "enable the court to compare the payment practices during the preference period with the prior course of dealing." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3; *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). The creditor needs to "demonstrate some consistency with other business transactions between the debtor and the creditor." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3. "The starting point—and often ending point—involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called "average lateness" computation theory." *Id.* "To determine whether a late payment may still be considered ordinary between the parties, a court will normally compare the degree of lateness of each of the alleged preferences with the pattern of payments before the preference period to see if the alleged preferences fall within that pattern." *See Id.* (quoting 5 COLLIER ¶ 504.04[2][ii], at 547-55). Generally, this involves a comparison of the average number of days between the invoice and payment dates during the pre-preference and preference periods. *See In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *4; *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 120 (Bankr. S.D.N.Y. 1997).

Although "a narrow band of difference is acceptable," payments delayed beyond a reasonable amount of time past the pre-preference period average do not fall within the ordinary course of business under Section 547 (c)(2)(B). *See Official Committee of Unsecured Creditors of Cyberrebate.com, Inc. v. Gold Force International (In re Cyberrebate.com, Inc.),* 296 B.R. 639, 643 (Bankr. E.D.N.Y. 2003) ("[P]ayments delayed more than 60 days beyond the pre-

9

preference period average are certainly not in the ordinary course of business . . . ."); *see also In re CIS Corp.*, 214 B.R. at 120-121 (holding that the payment is outside the ordinary course of business under Section 547(c)(2) as the 29-day delay "is not a trivial difference").

Here, the transfer does not fall within the ordinary course of business exception. The Defendant acknowledges that the Debtors paid the invoice "30 days from the average time from invoice date (61 days) during which the Debtors normally paid their invoices."[6] Def.'s Resp. at 8 (ECF No. 47). A 30-day delay is not a "trivial difference." The Defendant has not presented any evidence of a history of late payments between the parties nor is there any evidence of a history of correcting payments. *See* Kalinowski Aff. ¶ 10 ("The error and the issuance of a credit memo were not circumstances which were common to the transactions between the Defendant and Debtor."). Thus, the payment here is inconsistent with the parties' practice before and during the preference period. As such, the Court finds that the transfer is not in the ordinary course of business as it occurred beyond an acceptable amount of time from the pre-preference period average. *Compare In re Cyberrebate.com, Inc.*, 296 B.R. at 643 (payment 3-days beyond the pre-preference period average falls within the "narrow range of 'acceptable' difference" and is protected from avoidance as being in the ordinary course of business).

Nonetheless, the Defendant argues that the lateness was justified based on the particular facts of this case. The Defendant asserts that the Debtors delayed paying the invoice dated July 30, 2007 because the Defendant overcharged the Debtors for shrink wrap materials and that invoice took some time to correct. Def.'s Resp. at 8-9. "In evaluating the ordinary course of business defense, it is appropriate to consider when the payment in question was actually made.

---

[6] The Plaintiff asserts that the transfer was made even later, some 35.56 days beyond the pre-preference period average. Pl.'s Opp. at 10 (ECF No. 48). For purposes of summary judgment, the Court construes the facts in the light most favorable to the Defendant when considering the Plaintiff's motion for summary judgment. *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995).

To consider instead when it would have been made if events had turned out as the debtor intended opens the door of this exception to the preference provision far too wide." *In re Cyberrebate.com, Inc.,* 296 B.R. at 644 (*compare In re Barefoot*, 952 F.2d 795 (4th Cir. 1991) (payment to a creditor by a check to replace a previously issued check which was returned for insufficient funds held not in the ordinary course of business where there is no history of the parties operating in this fashion)).[7]

In any event, the Defendant has failed to meet its burden of proof of establishing the defense here. There is no evidence supporting the Defendant's argument of justified lateness. There is no evidence of any communication between the Defendant and the Debtors regarding the purported billing error, no evidence that the Defendant attempted to obtain the remittance within the pre-preference average period, no evidence as to when the Defendant notified the Debtors of the billing error, no evidence of a reissued invoice with a corrected balance, and no evidence as to why it took 90 days to correct the billing error.[8] Indeed, the only relevant evidence provided by the Defendant on the reason for the delay is a credit memo that the

---

[7] In *In re Cyberrebate.com, Inc*., creditor Gold Force argued that the 60-day delay fell within the ordinary course of business exception because the delay was inadvertent. Gold Force stated that when it contacted the debtor to inquire as to its payment, it was told by the debtor's employee that the check was mailed already so it was either lost or mishandled. Gold Force argued that the date of the replacement check should not exclude the transfer from the ordinary of business course exception. The bankruptcy court stated that there is no evidence that the "first" check was written and "lost or mishandled," noting that the debtor testified that there was no such evidence in the debtor's check register. Further, the bankruptcy court held that the issuance of the replacement check "does not make the date of the payment relate back to the original check date so as to be in the ordinary course of business." *In re Cyberrebate.com, Inc.,* 296 B.R. at 644.

[8] At the summary judgment hearing, the Court observed: "[The declaration] says, there was an invoice, and they were erroneously charged this for . . . this reason, there was a delay. There's no explanation as to what actually happened, in terms of telephone calls, communications, we issued another invoice, there's no other invoice. The [D]ebtor[s] call[ed] and complain[ed], said I'm getting ready to send the check but this number's wrong, there's nothing. And again, it's your burden. So what there is, is facts laid out, but they're not tied together in a way that satisfies [the ordinary course of business defense]." Hr'g Tr. 42:23-44:10; 46:9-18.

11

Defendant issued on the same date that it received the Debtors' payment to correct the Defendant's accounting records. Exs. A & C to Kalinowski Aff. (ECF No. 46). But this document fails to establish the elements of the defense.

Finally, the Defendant argues that it was unaware of the Debtors' bankruptcy filing, never sent "dunning" letters to the Debtors, raised prices, threatened to sue, withheld products, or demanded payment from the Debtors. (Kalinowski Aff. ¶¶ 12). But the absence of such collection pressure does not transform an otherwise unusual payment into one that is ordinary. *Ames Merchandising Corp. v. Cellmark Paper, Inc. (In re Ames Dep't Stores, Inc.)*, 450 B.R. 24, 33 (Bankr. S.D.N.Y. 2011) ("Making payments in response to creditor pressure can often be indicative of transactions out of the ordinary course. But the absence of such creditor pressure, while of course failing to support an out of the ordinary course finding for that reason, does not otherwise establish the opposite . . . . Even in the absence of creditor pressure, other facts support the conclusion that payments on account of [a certain invoice] were not made in the ordinary course of business."). The undisputed evidence overwhelming demonstrates that the Debtors paid their invoices on average about 55 days (or 60 days using the Defendant's calculation) after the invoice date during the pre-preference period, not 91 days after the invoice date like the transfer at issue here. The payment 91 days from the invoice date is uncharacteristic of the parties' relationship. Thus, the late payment transfer does not fall within the ordinary of business exception.

# CONCLUSION

Based on the reasons stated above, the Court recommends that summary judgment be granted in favor of the Plaintiff and that the Defendant's motion for summary judgment be denied. The Court directs that the Clerk shall serve forthwith copies of these Proposed Findings of Fact and Conclusions of Law on all parties by mail and note the date of mailing on the docket. Within 14 days after being served with a copy, a party may serve and file with the Clerk written objections which identify the specific proposed findings and conclusions objected to and state the grounds for such objections. A party may respond to another party's objections within 14 days after being served with a copy thereof.

Date:   New York, New York
        April 22, 2013

                                                    */s/ Sean H. Lane*
                                                    UNITED STATES BANKRUPTCY JUDGE